FILED

2021 Nov-18  PM 12:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FREDERICK ANTONIO FORD,        )
                               )
        Plaintiff,             )
                               )
v.                             )        Case No. 5:20-cv-703-ACA-GMB
                               )
MICHAEL FERGUS-DYETT,          )
                               )
        Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Frederick Antonio Ford filed a *pro se* amended complaint alleging violations of his civil rights while incarcerated in Limestone Correctional Facility.[1] Doc. 8. Ford seeks compensatory and punitive damages. Doc. 8 at 6. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint has been referred to a Magistrate Judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991). For the following reasons, the Magistrate Judge recommends that the court deny the motion for summary judgment filed by Officer Michael Fergus-Dyett ("Dyett").

## I. PROCEDURAL HISTORY

On March 8, 2021, the court entered an order for Special Report directing

---

[1] Ford has since been transferred to St. Clair Correctional Facility. Doc. 8 at 2.

Dyett to respond to the factual allegations set out in Ford's amended complaint. Doc. 11 at 1–4.  The order notified Dyett that, if appropriate, the court would consider the special report to be a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Doc. 11 at 7–8.

On July 12, 2021, Dyett filed his special report, supplemented by affidavits and other evidence. Doc. 22.  On July 14, the court construed Dyett's special report to be a motion for summary judgment and notified Ford that he had 21 days to respond. Doc. 23.  Ford filed a motion for additional discovery, which the court granted in part. Docs. 24 & 26.  Ford then filed a response to Dyett's special report, and Dyett produced additional evidence. Docs. 29 & 30.

## II.  STANDARD OF REVIEW

Because the court has construed the defendant's special report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the resolution of defendant's motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is on the moving party to

establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, can produce some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> [f]acts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because Ford is *pro se*, the court must construe the complaint more liberally than it would treat pleadings

drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  This is because a *pro se* pleading should be "held to a less stringent standard than a pleading drafted by an attorney." *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III.  SUMMARY JUDGMENT FACTS

On March 26, 2020, Ford was a federal inmate housed at Limestone Correctional Facility in Alabama. Doc. 8 at 6.  That night around 9:00 p.m., Ford alleges that Dyett escorted him to the shower. Doc. 25 at 1.  Afterwards, Ford and Dyett got into a "small argument" over the length of his shower. Doc. 25 at 1.  Dyett then directed Ford to turn around to be handcuffed, and Ford complied. Doc. 25 at 1.  Ford claims that Dyett handcuffed him too tightly and he explained to Dyett that the handcuffs were too tight and he was getting weak. Doc. 25 at 1.  Dyett nevertheless escorted Ford back to his cell and "slammed" the door. Doc. 25 at 1.  Dyett did not remove the handcuffs before locking Ford in his cell and leaving him there. Doc. 8 at 6.

Ford states that his cellmate and other inmates in his dorm began yelling, screaming, and kicking on their doors to get Dyett's attention so that he would return and remove Ford's handcuffs.[2] Doc. 25 at 2.  Ford passed out and another officer

---

[2] By affidavit, Dyett states that he has no recollection of this incident specifically, or even of Ford in general. Doc. 22-2 at 1.  In his special report, Dyett claims that "nothing prevented inmate Ford from calling out for help" (Doc. 22 at 8), but this is exactly what Ford claims he and other inmates did. Doc. 25 at 1–2 (alleging that "me, my cellmate, and the entire C-Dorm was hollering, and

4

found him when the next shift began around 10:00 p.m.[3] Doc. 25 at 2. Ford recalls that he regained consciousness in the infirmary, where Captain Langford took pictures of his wrists and the nurses performed an electrocardiogram.[4] Doc. 25 at 2. A nurse completed a medical progress form describing Ford as a "man down." Doc. 30-1 at 3.

Ford told the nurse what had happened to him, but she did not complete a body chart. Doc. 25 at 2. The medical records confirm Ford complained that he passed out because his handcuffs cut off his circulation.[5] Doc. 22-4 at 4. But while he was in the infirmary, Ford's vital signs were normal and he denied any other symptoms. Doc. 22-4 at 2–3 & 4. Captain Langford later questioned Ford's cellmate about the incident. Doc. 25 at 2. The following day, Warden Robinson told Ford that Dyett had been disciplined for leaving Ford handcuffed.[6] Doc. 25 at 3.

---

[sc]reaming, kicking on doors trying to get Officer Dyett to return, and take off handcuffs").

[3] Prison records reflect that Officer Adkins radioed for help at 10:10 p.m. Doc. 30-3 at 1. At 10:25 p.m., Officer Adkins and Officer Lynch escorted Ford to the infirmary. Doc. 30-3 at 1.

[4] Captain Langford "recall[s] determining that inmate Ford's allegations were false and unfounded." Doc. 22-1 at 2. And Langford specifically denies that he took pictures of Ford's wrists. Doc. 22-1 at 2. Although the court notes this and other factual disputes where appropriate, the facts for summary judgment purposes must be construed in the light most favorable to Ford, the nonmovant.

[5] Dyett asserts that Ford's claim of passing out in his cell is "completely contradicted by his medical record." Doc. 22 at 8. However, the only medical record before the court reflects that Ford reported that he "passed out O/T blood circulation cut off from wrist O/T handcuffs." Doc. 22-4 at 4. The form also reflects the notation "man down," Doc. 22-4 at 4, and does not support Dyett's assertion that Ford denied he had lost consciousness.

[6] Rebecca Steele, an Administrative Support Assistant at St. Clair Correctional Facility, submitted a declaration that Ford's prison records do not document the alleged incident on March 26, 2020.

## IV.  ANALYSIS

On these facts, Ford asserts a claim of excessive force in violation of his Eighth Amendment rights. Doc. 8 at 3.  Dyett has moved for summary judgment on this claim, but his motion is due to be denied.[7]

### A.    Immunity

Dyett first argues that he is entitled to absolute immunity. Doc. 22 at 10–11. Because Ford sued him in his individual capacity alone (Doc. 8 at 3), this argument is unavailing. *See Jackson v. Ga. Dept. Transp.*, 16 F.3d 1573 (noting that the Eleventh Amendment does not immunize officials sued in their individual capacities).

Dyett also claims that he is entitled to qualified immunity. Doc. 22 at 11. Qualified immunity requires an officer "first show that he acted within his discretionary authority." *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (citing *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).  Ford

---

Doc. 22-3 at 1.  Nekitris Estelle, a Classification Specialist Supervisor, also provided an affidavit confirming that no report exists for an incident involving Ford and Dyett in March 2020. Doc. 30-2 at 1.

[7] On review pursuant to 28 U.S.C. § 1915A, the court found that only one cause of action survived the pleading stage: Ford's claim of excessive force against Dyett. Docs. 9 at 9 & 10.  Dyett's brief in support of summary judgment nevertheless characterizes Ford's claim as a complaint about his conditions of confinement and focuses on the deliberate indifference standard. *See, e.g.*, Doc. 22 at 7–8.  While the Seventh Circuit may not agree, *see Ajala v. Tom*, 658 F. App'x 805, 807 (7th Cir. 2016), the Eleventh Circuit has analyzed painful handcuffing as a malicious application of force. *See Sears*, 762 F. App'x at 918.  This court will follow the Eleventh Circuit's lead in finding that the excessive force standards govern Ford's claim.

does not dispute Dyett's claim that he was acting within his discretionary authority. Thus, Ford must show "facts establishing both (1) that [the prison official] violated a constitutional right and (2) that the relevant right was 'clearly established' at the time of the alleged misconduct." *Crocker*, 995 F.3d at 1240 (citing *Jacoby v. Baldwin County*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

Qualified immunity generally cannot protect against an excessive force claim, because "the use of force maliciously and sadistically to cause harm is clearly established to be a violation of the Constitution." *Skrtich v. Thorton*, 280 F.3d 1295, 1301 (11th Cir. 2002). Therefore, Dyett cannot claim qualified immunity as to Ford's excessive force claim.

## B.     Excessive Force

Force in a custodial setting must be "applied in a good faith effort to maintain or restore discipline," not "maliciously or sadistically to cause harm." *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). This analysis incldues both a subjective and objective component: (1) whether "the 'officials act[ed] with a sufficiently culpable state of mind'" and (2) whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 & 303 (1991)).

7

To determine the subjective component and evaluate whether a use of force was excessive, the court considers (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible official, (4) any efforts to temper the severity of a forceful response, and (5) the extent of the injury suffered by the inmate. *Hudson*, 503 U.S. at 7; *see also Sears*, 922 F.3d at 1205 (internal quotations and citations omitted).  After considering these factors, the court may draw inferences about whether the use of force was necessary or amounts to "such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Skrtich*, 280 F.3d at 1300–01.

Under the objective component, claims based on *de minimis* uses of physical force by prison guards are not cognizable.  Instead, to be actionable the force must be "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10.  However, "significant injury" is not a threshold requirement and *de minimis* injury does not necessarily bar a prisoner's excessive force claim. *See Jean-Denis v. Mason*, 857 F. App'x 495, 499 (11th Cir. 2021) (citing *Wilkins*, 559 U.S. at 37–38).  This is because injury and force are

> only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

*Wilkins*, 559 U.S. at 38.

Applying the *Hudson* factors and construing the facts in the light most favorable to Ford, Dyett has not explained why he would leave a compliant prisoner in tight handcuffs once he returned to his cell. Doc. 22.  Dyett and Ford may have had some form of disagreement about the length of time Ford spent in the shower, but afterwards Ford obeyed Dyett's command to submit to handcuffing. Doc. 25 at 1.  Although Ford told Dyett that the handcuffs were too tight and he was getting weak, Dyett refused to loosen them even after walking Ford back to his cell. Doc. 25 at 1.  And Ford was still in handcuffs when Dyett locked Ford in his cell and left him there. Doc. 25 at 1.

Dyett has not provided any explanation for these decisions or articulated any basis for finding that he was justified in using force against Ford.  Instead, he maintains that he has no memory of Ford or this incident. Doc. 22-2 at 1.  But there is some evidence that the event took place since Ford's medical records memorialize his report that he passed out because of tight handcuffs. Doc. 30-1 at 3.  Moreover, the Duty Post Assignment log for the day of the event confirms that two officers escorted Ford from his cell to receive medical care. Doc. 30-3 at 1.  Because there is evidence that the event occurred and Dyett has not established any need for using force, the court cannot conclude that Dyett acted in a "good faith effort to maintain

or restore discipline." *Wilkins*, 559 U.S. at 37.

As to Ford's injury, painful handcuffing—standing alone and resulting solely in minimal injury—generally does not constitute excessive force, at least in the Fourth Amendment context. *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019) (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002)). But the Eleventh Circuit has made clear that "the absence of a serious injury [does] not preclude a determination that the prison officials maliciously applied force." *Sears v. Warden Okeechobee Corr. Inst.*, 762 F. App'x 910, 918 (11th Cir. 2019). Here, viewing the facts in the light most favorable to Ford, the court cannot conclude, as a matter of law, that the use of force was *de minimis*. Ford states under oath that he told Dyett the handcuffs were too tight and they were making him weak. Doc. 25 at 1. Dyett not only refused to loosen the handcuffs in that moment, but he later left Ford in his cell without removing them. Doc. 25 at 1–2. Taking the facts in the light most favorable to Ford, the handcuffs then cut of his circulation and caused him to lose consciousness. Doc. 8 at 6 & 30-1 at 3. Although Ford's injuries may be less severe than those associated with some other excessive force allegations, the way he was injured "cannot be chalked up to [the] routine discomforts of confinement." *Thompson*, 805 F. App'x at 904. On this record, a reasonable juror could find that Dyett "maliciously and sadistically applied force to . . . harm him and cause him

pain, rather than to maintain control." *Sears*, 762 F. App'x at 917–18.  Therefore, the court recommends the denial of Dyett's motion for summary judgment as to Ford's excessive force claim.

## V.  RECOMMENDATION

For the reasons stated above, the court RECOMMENDS that the defendant's motion for summary judgment (Doc. 22) be DENIED.   The court further RECOMMENDS that Ford's surviving claim be referred back to the Magistrate Judge for further action consistent with this opinion.

## VI.  NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within 14 calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate

judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE and ORDERED on November 18, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

12